All right, Mr. Brissenden, you have ten minutes, but you've reserved five minutes for questions. You've reserved two for rebuttal, so that gives you eight now. You may proceed. Thank you. I'd like to start, if I could, with a discussion about substantive reasonableness. The year that Ms. Gates was sentenced, the average sentence imposed on a defendant convicted of criminal sexual abuse of a child in this circuit – and I'm not talking about child pornography offenses, distribution, possession. I'm talking about the actual sexual abuse of a child – the average sentence imposed in this circuit was 17 years. The district court in this case came close to tripling that. The 45-year sentence imposed on Ms. Gates, a first-time offender, is the product of a broken guideline that was foisted on the Sentencing Commission by Legislative Fiat that is completely untethered to the empirical approach that courts rely on every day. You say that it's the product of the guidelines when the court explicitly departed from and varied from the guidelines. Well, of course, it was the starting point, as it always is, is the starting point of the sentence that the court imposes. So the court found a 90-year sentence recommended by the guidelines. That was the starting point of its discussion. It requires the court to start with the guidelines, but it also requires the judge not to presume that the guidelines are correct, and I didn't see the judge in this case presuming that the guidelines were the correct sentence. Well, I think the sentence was unquestionably anchored in those guidelines. There seems to be a little tension between that argument and the argument in your brief, which you may get to, which is that the judge had predetermined what happened here, right? I mean, it seems like the judge really didn't talk about the guidelines very much at all. He was much more focused on the conduct, and this is conduct that is pretty egregious. It's hard to know whether the average case that got a 17-year sentence had conduct comparable to this. Have you assessed what exactly were the circumstances in those other cases? Well, of course, what we have are raw statistics, and so I grant that, Your Honor. I can't do a case-by-case analysis of the cases that comprise those statistics. But even if you believe that this case had aggravating factors above and beyond those average cases, it's also a question of scope. I mean, if we start with that 17-year number, we're talking about a sentence that is 28 years above and beyond what the average offender receives. And so no matter what aggravating factors you focus on here, and I would take issue with the idea that Ms. Gates was more culpable than the average offender. But even if you do believe that, what possible factor in this case could justify an additional 28 years above and beyond what the average offender receives? As the courts, I'm sure, are aware, 28 years, that additional time, is far more than we normally impose on homicide cases. It's as if Ms. Gates had committed the average sexual offense and then gone out and murdered someone. The problem comes back, and I don't think there's a tension here. You asked about the issue of the tension with the argument about it being predetermined. There was, and I don't want to fault defense counsel, but there was no objection to these guidelines. So the judge went into the sentencing knowing exactly what the guidelines were. He knew what the recommendation was under the guidelines. So I don't think there's a tension of this notion that the sentence was fundamentally anchored in these unreasonable guidelines, and that he went into the sentencing proceeding aware of that. You know, the people suggest that there can't be substantive unreasonableness in a case where you actually have the sexual abuse of a child. You know, the argument is this isn't Dorvey. And I understand this isn't Dorvey, and I understand this conduct is terrible and it's serious. But that's simply not true, because this issue has percolated again and again and again in this Court, and it's clearly troubled a number of judges. First, in Broxmire, with Judge Jacobs' dissent. In 2016, four years later, in United States v. Sawyer, this Court found that a 30-year sentence imposed on a gentleman who had produced child pornography of a 4-year-old and a 6-year-old, two victims in that case, a 30-year sentence was substantively unreasonable. It was sent back, and later this Court affirmed the 25-year sentence. 20 years less, 20 years less. Your time is limited.  I want to talk about the procedural errors as well. Starting with, and I'm happy to answer any specific questions beforehand. The use of a camera, I'm interested in your views about the PSR, suggested that the use of a camera satisfied the computer use enhancement, and the government offers an alternative explanation for the use. But there was some solicitation and anticipation of the potential participation of the two other daughters. That's what the two other daughters, not the one, that was discussed between Mr. Perry and Ms. Gates, I think. Why doesn't that satisfy that enhancement? To start with, I think the rationale that the PSR and the Court relied on, I mean, that's just plain error. It's clear that taking photographs with a camera doesn't satisfy this enhancement. Even if you shift the focus from what the Court didn't look at, right, if we look at instead the communications, there were these text messages between Ms. Gates and Mr. Perry. But what the enhancement says is it applies when you use a computer to solicit the victim, right? It doesn't talk about communications between co-conspirators. It's just plainly not covered by that enhancement, and I would submit it's plain error under any justification. If you could turn to grouping? Well, it's, I mean, the language is the use of a computer to solicit participation by or with a minor in sexually explicit conduct. So why wouldn't the with? This was the computer used to solicit participation by the co-conspirator with the minor. And I think especially if you look at it, and I don't have the language directly in front of me, but I would submit that language is self by and with. And then I think there is also an application note that makes it pretty clear that what they're talking about are efforts to reach out directly to minors in order to solicit their participation. But you would win even if it's discussion but not solicitation, if both, if there's no inducement from the other party, they're just both equally interested. That would constitute a solicitation. I think the solicitation has to be directed, number one, towards the victim. And number two, I'd also say this. These text messages that the Court focused on, and those text messages are upsetting. I understand they're upsetting to the Court. But they weren't tied to these specific accounts, right? I mean, there was no indication that those communications preceded either of the events that were charged in the indictment. So for that reason, too, I don't think there's a nexus between those text messages and the use of an electronic device in order to solicit the participation of a victim. I mean, the problem, of course, is that none of these objections were made. So this is plain error in review, right? That's correct. None of them were made below it. I do think it raises to the level of plain error. I mean, I guess there would be an opportunity later in a habeas to make an ineffective assistance of counsel argument. You're not making that now. You have to, of course. But are you suggesting that that was an effective assistance to not make these objections? I don't have access to the conversations that went on. Obviously, that would be part of a 2255. What I'm saying is, looking at the record, I think these errors should have been added to anyone looking at it. I mean, I think that includes counsel, but it also includes the other participants in the proceeding, including the sentencing judge. And the same goes, I think there was a question about the grouping analysis. It's standard law, though. When you have a substantive offense and a conspiracy, those are grouped together. I mean, there's just no question the grouping analysis is fine. But if we agree with you on that, I mean, that would take the guidelines range from 51 to 50, I think, right? Right. That's 43. So why is that? Why wouldn't that fail to meet plain error because there's really no prejudice? Right. So obviously, the court would have to look at all of these procedural errors cumulatively, although I will say the procedural errors aren't just limited to the guidelines calculation. We also have the failure to comply with Rule 32, right, where the court does not verify with the defendant during the proceedings that she read and discussed the PSR. Yeah, and assume that we agree with you on that. Where is the – how is that error harmful? How is there – where is the prejudice on that? So it ties back in part to the discussion we're just having because I think the guidelines calculations themselves are rife with errors, but also to the extent that there are any factual assertions in this PSR that the judge particularly relied on in order to justify its sentence. You know, if we don't have – there's a reason why these guardrails are in place, and the court, even after being reminded that it needs to adhere to those guidelines, failed to do that. But, I mean, again, it's a plain error review because there was no objection at the time. Right. And so are you suggesting that every time a judge fails to do the proper verification under Rule 32 that we should send it back? I think every time – well, certainly if we have a situation like this where there are clear errors in the underlying guidelines calculation, I think that takes it – that makes it a not harmless error. I mean, but isn't the problem with your argument that even if we agree with you on some of the guidelines adjustments, unless it brings it down to Level 43, the operation of the guidelines themselves brought the offense level down to 43? So the rule – and you're correct. The rule this Court has previously articulated is that even if a guidelines enhancement is mistakenly applied, if it doesn't ultimately change the recommended sentence, that's typically harmless error. And I acknowledge that's the rule that this Court has articulated. But, you know, I would submit this case is a little bit different and sort of unique because these enhancements, a number of these enhancements, they're not just numerical tabulations. I mean, these are normative value judgments that are being made. And I'm thinking particularly here when we talk about a finding that she's a repeat and dangerous offender deserving of an additional five points under the guidelines. You know, one of the things the Court came back to when it justified the sentence, with very little support on the record, it found that she was in extreme danger of reoffending, right? And you have almost the guidelines stamp of approval on that finding because she's placed in this special and unique category. It says, right, she's a repeat and dangerous offender. It's an easy judgment for the district court to use. Well, she has multiple children and she was offering her children to people who are manufacturing and, you know, engaging in physical contact with the child. Her offense conduct was based on two incidences with one individual, right? There are, you know. Right. But the record also reflects other communications about other children, right? So you say she's a first-time offender. You're suggesting she's not at risk of recidivism. I think that's hard to square with the record here. With this particular defendant, I want to be clear. There's nothing in the record suggesting that any of these children were abused by anyone else other than Mr. Perry, right? The communications were with Mr. Perry. There was only one actual victim, right? Although there are text message communications about other individuals or other children of hers that were not the subject of abuse or not the subject of this case. So, but my point was that in cases fraught as this, these guidelines calculations are not just a numerical tabulation. They represent something more meaningful, and I think they underpin and they inform the way that the judge views a defendant. And so even if you don't get down to below 43, I think the defendant was prejudiced by these findings and the procedural errors that occurred with respect to, especially that determination that she was a repeat and dangerous offender. All right. Well, thank you, Mr. Christensen. You've got two minutes for rebuttal. We'll now hear from Mr. Silver. Thank you. Thank you, Your Honors. May it please the court. I put a footnote in my brief indicating that although the government maintained that all of the guidelines calculations were properly made, if the court disagreed, there'd have to be a calculation to see if that affected the ultimate offense level of 43. So what I did, and I should have done earlier, I apologize for not having done so, is I assumed for purposes of argument that the defense was correct that all of the calculations in the PSR that are challenged were wrong. And even in that case, the adjusted offense level exceeds 43 and would still be reduced to 43, which becomes the offense level, obviously. So even in their totality, there is no reduction in offense level if they're all wrong. I can tell you how I did that if that would be helpful. I'll do it. I mean, I don't think it's a terribly complicated exercise. I'm so proud to have done it. Can you respond to the argument about the judge not making sure that the defendant and her counsel discuss the pre-sentence report? I mean, the cases that you rely upon seem really quite far apart from what happened in this case. I don't think so, Your Honor. Well, first of all, they involve a different version. Most of them involve a different version of the guideline, right? Cortez was an old case that discussed a former version of the rule. So what verification happened here? The court did not engage in the inquiry that it should. No question about that. Okay. Well, and, I mean, the government asked the court to verify consistent with the rule, and the court sort of defiantly said, I'm not doing that. I mean, how on earth is that verification? The question is, can the court make that determination by viewing other aspects of the record? Right, but in this case there were no objections to the guidelines by defense counsel. This is a long pre-sentence report, and there may be some evidence that the defendant read the pre-sentence report. There may be evidence that the defense lawyer was aware of the attachment to the pre-sentence report. As I read the record, there's zero evidence that would support the notion that the defendant and her lawyer discussed the pre-sentence report. I think it's a fair inference that they did. Why? Why? Both the lawyer and the defendant herself did make a reference to the PSR, separate references to the PSR. But what would support an inference that they discussed it? I think it's fair to say that lawyers are presumed to have acted accordingly. That just gets rid of the rule, right? You just say you don't even need a rule. You just say lawyers are presumed to operate in accordance with law. Well, the point here, Your Honor, is I think it's a fair inference that while this defendant was incarcerated, she was provided with a copy of the pre-sentence report. She obviously read it and made the comment in her letter to the judge that she was unhappy with something she read in the report. The sentencing memorandum submitted by defense counsel indicates his familiarity with the report. So he obviously read it. I cannot tell you that there's evidence in the record that expressly indicates those two people discussed the report. But isn't that what the judge has to do? The judge has to verify that. So it seems to me that what you're doing now is sort of you're moving into an argument that there's no prejudice, and because this is a plain error review, that might be enough. But I don't see how you can argue this is not error. I mean, I don't see why it is that a judge would think that they'd get to disregard Rule 32. I mean, it boggles the mind. Your Honor, I don't mean to suggest that the court did not err. It had an obligation to do this. It should have done it through express inquiry. Yeah, it should have done it, and the government reminded. Sometimes it's frustrating when the government knows there's an error and doesn't say anything for fear, perhaps, of raising the ire of the court. But here the government says, could you please do this, which is required, and the judge said, no, I'm not doing that. They'll get a chance to tell me if they object, and that's not what the rule calls for. I mean, they're entitled to an opportunity to object, but the court has to verify that the report was read and discussed. And the court didn't do that, but on plain error review, this court is entitled to consider. But on plain error review, it seems to me a little odd to apply in this circumstance, where the defense counsel would then need to object to the judge's failure to ask the defense counsel whether he had discussed the PSR with his client. Doesn't that seem a little strange? Well, I would add to that, Your Honor. And I would say if, in fact, the defendant and their attorney did not discuss the PSR, you would know that by now, right? Well, I guess your point is that because the appellant has the burden of establishing prejudice, there needs to be something in the record that reflects prejudice. Or in addition to the record, the defendant would have been entitled to submit an affidavit that said, I never discussed this with my attorney. How does that work as a matter of procedure? I mean, the record, judgment is entered, sentence is entered. Are you suggesting that there's some post-judgment proceedings that would have to happen? I don't get it. I believe it's Rule 11 of the Federal Rules of Appellate Procedure. My memory may not be correct, but there is a provision in the Rules of Appellate Procedure to supplement the record with that kind of information. Well, there would also be a basis for a habeas here, I suppose, too, about ineffective assistance. Yes. But even the notion that this whole colloquy took place in front of the judge, who I agree erred in not making the express inquiry. No one said, you know, I didn't have an opportunity. There's nothing in the record to show that they didn't. He worked so hard to get her to speak to him at all, and she resisted. There was no way. I mean, he was energetically inviting her and explaining to her why it would be beneficial potentially for him, for her to address the court, and she just was not going to talk in any way for whatever reason. I don't see how that he could have done more. So to, you know, ask more particularly, she was just non-responsive. Well, the other person present was the defense lawyer who could have said, you know, something about not having had the opportunity to discuss the pre-sense report. I understand that that's odd. I concede your point, Your Honor. But on plain error review, with nothing to indicate that, to this point even, nothing to indicate that there wasn't a discussion of the pre-sense report. Let me ask a different question. Am I right in understanding that Judge McAvoy sentenced both Mr. Perry and Ms. Gates? And I think that Mr. Perry was in 2020, fall of 2020, and then in August 2021, Ms. Gates? I'm not sure. My point is it's Judge McAvoy in both instances. Yes, Your Honor. And what was Mr. Perry's sentence? The same as Ms. Gates. How could the judge have ever reached that conclusion? Well, he made a record about reaching that conclusion, Your Honor. He said that his review of the text messages, particularly in paragraphs 21 to 27 of the pre-sense report, demonstrated Ms. Gates' sexual interest in engaging in this behavior. And those messages reflect as well that she's initiating many of those communications. So the very messages that now were presumed that the defense lawyer didn't discuss with his clients? If you presume that. He had the possession counts as well, right? I mean, he had a vast trove of child pornography on his devices. Yes. And she did not. She did not. But she engaged fully in the sexual abuse of Victim 1, including her own oral penetration of the victim. Did Mr. Perry have distribution charges or just possession as well? I believe he had distribution charges, Your Honor. So possession, distribution, this conspiracy, these two production counts. I believe that's correct. And she had the production counts. Correct. Production counts. It seems just surprising. So how did the judge address the differential that he relied on these text messages in those paragraphs of the PSR? And her conduct as well. I thought Judge McAvoy did a fairly thorough job of explaining why he felt these two co-defendants, they're not the same charging instrument, but these two co-defendants were equally culpable in the victimization of this child. I'm sorry, and where is that explanation that you rely on? At the sentencing hearing. At the sentencing hearing's oral discussion? Yes. Well, obviously, Ms. Gates has a different responsibility to the victim than the other defendant, right? They were both parents, Your Honor, of this victim, so I'm not sure that she had a greater responsibility. There was a period when Perry was not living with them, but I mean, okay, yes, that's correct, Your Honor. But I thought Judge McAvoy did a very thorough job. I actually was surprised to see such a thorough job of explaining that similarity in the conduct, but I don't think it would be right to say that's clearly the wrong answer. And the possession and distribution charges that he was convicted of involved other victims, correct? I assume so, Your Honor. Thank you. All right. Thank you very much, Mr. Silber. We'll hear from Mr. Bressenden for two minutes of rebuttal. Perhaps, Mr. Bressenden, you can get to the point with respect to the Rule 32 verification, or lack thereof, and what it means then for there to be prejudice, I guess. I mean, it's clearly an error, it seems to me, but what on the record suggests that if that question had been asked, the answer would have been no, I haven't read it or I haven't discussed it. I'm not certain. I mean, that's a burden, right, that because we're dealing with an absence of evidence, right, because the question wasn't asked. But what does it mean then to have to show prejudice, I guess? Right. I think what the prejudice analysis has to focus on whether or not the judge's guidelines calculation was in any way flawed, right? If a closer analysis of that guidelines calculation would have revealed errors. So I just want to be clear on this. So failure to properly verify plus a guidelines error means prejudice. I think that has got to be certainly one of the things that the Court looks at. I mean, isn't it easier to just have this sort of get sorted out as part of a habeas? It would seem to me that that's when there will be a record that can be developed as to whether or not, in fact, the lawyer did discuss the PSR that had been read by both client and lawyer and what that discussion consisted of. I mean, in other words, we don't have to worry too much that a horrible abuse has taken place because everybody's on notice of it now and your client will get to bring that habeas, right? My concern is if that's the rule, ultimately this will be an issue that can never be raised on appeal, right? The answer is always going to be there's an absence of evidence in the record. It reads the requirement out of the rules for direct appeal. I'm sorry. It would read the requirement out of the rules for direct appeal. Essentially, it would mean the only avenue for addressing it. Were there factual errors in the PSR? I mean, it seems to me unlikely that Ms. Gates necessarily would have a view about grouping or about the application of certain guidelines to certain circumstances, but to the extent there were factual errors or other omissions that were relevant or that kind of thing that you'd expect her to be able to comment on, is there anything in the record that suggests those kind of errors were in there and would have come to light had she had the discussion we're presuming did not happen with her counsel about the PSR? I think one of the things that troubles me is in assessing Ms. Gates' culpability, one of the things the judge focused on in particular said that she had sought out the company of other persons who were sex offenders and even suggested that perhaps something had happened with these other individuals, and there's simply nothing in the record to actually support that assertion. So that troubles me, especially given the weight that the court placed on that factor. And this comes back also a little bit to part of his rationale, and this goes to questions the court was asking on substantive reasonableness. You asked about factors that differentiated Ms. Gates from Mr. Perry. Not only did he have a massive trove of independent child pornography, he also had a criminal history. He was criminal history category two, so he was also in a different criminal history category than she was. And what the judge actually said, and again, I'm not in the court's mind and I can't speak to that, but what the judge said is that your behavior goes so far afield of what I expect from a mother. And I suspect the court saw that, and I think the court even assumed that perhaps Mr. Perry wasn't a parent. He was a parent as well. He was a father. Why did that analysis apply particularly to Ms. Gates? So all of these – Well, I mean, she's the primary caregiver, right? Well, he was there for a substantial portion of the children's plots. He was in and out of the house. There were times when he would leave and come back, but they had a longstanding relationship where they were cohabitating. Weren't there times also when he was the caregiver during the day and she would be gone? That's correct. That's correct as well. So, you know, as far as the question of prejudice, you know, it's hard to speculate on what would have happened if we knew she saw all of this. But what I do know is that she had an absolute right to be sure that she had reviewed this and verified this with her attorney. And there's enough troubling things here in this record, both as far as how this calculation was conducted, glaring errors in the calculation, sort of extraneous facts that the judge seemed to attach undue weight to, that I just can't see how that clear error was harmless in this case. The glaring facts that the judge attached weight to, what are you referring to? I'm saying the judge attached a lot of significance to sort of incidental mentions in the PSR, for instance, that she had other relationships with people who were deemed to be sex offenders. And the court suggested that she had sought those individuals out, and it even suggested, I think, that she may have participated in abuse with those individuals. So just the question was asked, what types of things could have influenced if they had been brought to her attention? All right. Well, thank you, Mr. Pressington and Mr. Silver. We will reserve decision. Thank you.